1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                       CENTRAL DISTRICT OF CALIFORNIA
10
11   STEVEN R.,[1]
                                           Case No. 5:22-cv-02173-GJS
                    Plaintiff
12
          v.
13                                         **MEMORANDUM OPINION AND**
     KILOLO KIJAKAJI, Acting              **ORDER**
14   Commissioner of Social Security,
15                 Defendant.
16
17
18               **I.     PROCEDURAL HISTORY**
19        Plaintiff Steven R. ("Plaintiff") filed a complaint seeking review of the
20   decision of the Commissioner of Social Security denying his application for
21   Disability Insurance Benefits ("DIB").  The parties filed consents to proceed before
22   a United States Magistrate Judge [Dkt. 7, 9, and 20] and motions for summary
23   judgment [Dkt. 14 (Pl. Br.), 17 (Def. Br.), and 18 (Response)] addressing disputed
24   issues in the case.  The matter is now ready for decision.  For the reasons set forth
25   below, the Court finds that this matter should be affirmed.
26   _____
27   [1]      In the interest of privacy, this Order uses only the first name and the last
28   initial of the non-governmental party.

## II.   ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for DIB on August 24, 2020, alleging disability beginning July 18, 2018.  [Dkt. 13, Administrative Record ("AR") 10, 221-22.]  Plaintiff's application was denied at the initial level of review and on reconsideration.  [AR 10, 109-13, 120-32.]  A telephone hearing was held before Administrative Law Judge Daniel Benjamin ("the ALJ") on January 13, 2022.  [AR 10, 25-69.]

On February 14, 2022, the ALJ issued an unfavorable decision applying the five-step sequential evaluation for assessing disability.  [AR 10-19]; *see* 20 C.F.R. § 404.1520(b)-(g)(1).  At step one, the ALJ determined that Plaintiff engaged in substantial gainful activity from the alleged onset date through December 2018, but did not engage in substantial gainful activity from January 2019 through the date of the ALJ's decision.  [AR 12.]  At step two, the ALJ determined that Plaintiff has the following severe impairments:  obesity; asthma/chronic obstructive pulmonary disorder; right knee degenerative joint disease; chronic fatigue syndrome; obstructive sleep apnea; gastrointestinal reflux disease (GERD); cervical spine degenerative disc disease; and lumbar spine degenerative disc disease.  [AR 13.]  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations.  [AR 14]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel crouch, and crawl, frequently push and pull with the right lower extremity, and occasionally be exposed to extremes of cold and heat and pulmonary irritants, but Plaintiff cannot climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous moving machinery parts.  [AR 14-15.]  At step four, the ALJ determined that Plaintiff is capable of performing his past relevant work as a

1  construction estimator.  [AR 18-19.]  Therefore, the ALJ concluded that Plaintiff

2  was not under a disability from July 18, 2018, through the date of the decision.  [AR

3  19.]

4         The Appeals Council denied review of the ALJ's decision on October 31,

5  2022.  [AR 1-6.]  This action followed.

6         Plaintiff raises the following issues challenging the ALJ's findings and

7  determination of non-disability:

8         1.    The ALJ failed to properly evaluate the opinions of Plaintiff's

9               physicians.  [Pl. Br. at 5-11.]

10        2.    The ALJ failed to properly evaluate Plaintiff's RFC.  [Pl. Br. at 11-13.]

11        The Commissioner asserts that the ALJ's decision is supported by substantial

12 evidence and should be affirmed.  [Def. Br. at 2-15.]

13

14                    **III.    GOVERNING STANDARD**

15        Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to

16 determine if:  (1) the Commissioner's findings are supported by substantial

17 evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v.*

18 *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r*

19 *Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence … is

20 'more than a mere scintilla' … [i]t means – and only means – 'such relevant

21 evidence as a reasonable mind might accept as adequate to support a conclusion.'"

22 *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v.*

23 *Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) ("[s]ubstantial evidence is

24 more than a mere scintilla but less than a preponderance") (internal quotation marks

25 and citation omitted).

26        The Court will uphold the Commissioner's decision when "'the evidence is

27 susceptible to more than one rational interpretation.'"  *Burch v. Barnhart*, 400 F.3d

28 676, 681 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989)).  However, the Court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or that, despite the error, the agency's path may reasonably be discerned."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.    DISCUSSION

### A. Opinion Evidence

Plaintiff contends the ALJ improperly evaluated the opinions of his treating physicians.  For claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Under the new regulations, ALJs articulate how "persuasive" they find the medical opinions and prior administrative medical findings to be.  20 C.F.R. § 404.1520c(a)-(b).  The new regulations eliminate the hierarchy of medical opinions and state that the agency will not defer to any particular medical opinions, even those from treating sources.  20 C.F.R. § 404.1520c(a); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.").  Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of an opinion in determining whether the opinion is persuasive.  20 C.F.R. § 404.1520c(c).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'"  *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is

1   'consistent ... with the evidence from other medical sources and nonmedical sources

2   in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

3        An ALJ may also consider a medical source's relationship with the claimant

4   by looking to factors such as the length of the treatment relationship, the frequency

5   of the claimant's examinations, the purpose of the treatment relationship, the extent

6   of the treatment relationship, and whether there is an examining relationship. *See* 20

7   C.F.R. § 404.1520c(c)(3). An ALJ is not, however, required to explain how these

8   secondary medical factors were considered, unless it is determined that two or more

9   medical opinions about the same issue are equally well-supported and consistent

10   with the record but not identical. *See* 20 C.F.R. § 404.1520c(b)(2)-(3).

11        Here, in evaluating Plaintiff's chronic fatigue syndrome, GERD, sleep apnea,

12   and other conditions, the ALJ considered Department of Veterans Affairs (VA)

13   disability questionnaires and other supporting records from Plaintiff's doctors, as

14   well as an August 2020 VA disability decision.[2] [AR 15-17, 201-20, 409-91, 785-

15   93.] Referring to the medical sources collectively as the "Veteran's Administration

16   doctors,"[3] the ALJ determined that the opinions of Plaintiff's doctors were "partially

17   persuasive." [AR 17.] While Plaintiff asserts that the ALJ improperly considered

18   "all of the treating physicians together" as a group, Plaintiff specifically challenges

19   the ALJ's evaluation of only two medical sources, Dr. Eddy Escobar and Dr.

20   Tommy Tiong-Hien Oei. [Pl. Br. at 6-7.]

21        Dr. Escobar became Plaintiff's primary care physician at Kaiser Permanente

22   in February 2019. [AR 852.] A physical examination of Plaintiff was generally

23   normal, except Plaintiff was obese and positive for a leg rash, blood in the stool, and

24

25   [2]     The VA disability decision granted Plaintiff's appeal for Total Disability

26   Individual Unemployability benefits and Dependents' Educational Assistance. [AR 201-20.]

27   [3]     Plaintiff points out that many of the medical sources referred to the as the

28   "Veteran's Administration doctors" were associated with Kaiser Permanente. [Pl. Br. at 7.]

1   back pain.  [AR 523.]  On August 28, 2019, Dr. Escobar completed a VA chronic

2   fatigue syndrome disability benefits questionnaire for Plaintiff.  [AR 409-11.]  Dr.

3   Escobar stated that Plaintiff stopped working full time on July 17, 2018, due to an

4   acute onset of chronic fatigue, and that his symptoms included severe fatigue,

5   pharyngitis, sore throat, post-nasal drip, general malaise, muscle aches or weakness,

6   headaches, joint pain, neuropsychologic symptoms, sleep disturbances, difficulty

7   concentrating, poor attention/focus, and short-term memory loss/forgetfulness.  [AR

8   409-11.]  Dr. Escobar opined that Plaintiff's symptoms would restrict routine daily

9   activities 50 to 75 percent of pre-illness levels, result in periods of incapacitation of

10  at least six weeks per year, and prevent him from finding gainful employment.  [AR

11  410.]

12      On June 17, 2019, Dr. Oei, a Kaiser Permanente gastroenterologist, diagnosed

13  Plaintiff with GERD.  [AR 450, 515.]  An endoscopy showed that Plaintiff's

14  esophagus, stomach, and duodenum were within normal limits.  [AR 515.]  Dr. Oei

15  recommended that Plaintiff take omeprazole two times a day, try to make lifestyle

16  changes, avoid trigger foods, and sleep with the head of his bed elevated.  [AR 453,

17  515.]  In a VA esophageal conditions disability benefits questionnaire, Dr. Oei

18  reported that Plaintiff had the following signs or symptoms due to an esophageal

19  condition:  persistently recurrent epigastric distress, dysphagia, pyrosis, reflux,

20  substernal arm or shoulder pain, and sleep disturbance.  [AR 450-51.]

21      Plaintiff asserts that the ALJ failed to properly consider the supportability and

22  consistency factors in evaluating the medical evidence and failed to articulate valid

23  reasons for discounting his doctors' opinions.  [Pl. Br. at 8-9.]  The Court disagrees.

24      The ALJ explained that the opinions of Dr. Escobar, Dr. Oei, and the other

25  medical sources were only partially persuasive, as they were inconsistent with and

26  unsupported by the medical and other evidence in the record.  [AR 17.]

27  Significantly, the ALJ noted that Plaintiff's admitted activities included taking care

28  of his young child at least 40 hours a week while his wife was at work.  [AR 15-17,

6

41-42, 47.]  Plaintiff also works two to three hours per week for the family business
and spends about two hours per week teaching an online course.  [AR 15-17, 30-35.]
In addition, Plaintiff was in the process of applying to flight school and was "trying
to get medical clearance to begin flight school."  [AR 17, 50.]  Thus, the ALJ
reasonably concluded that Plaintiff's admitted activities were inconsistent with the
medical opinion evidence suggesting that he suffered from debilitating symptoms
and limitations.  *See* 20 C.F.R. § 404.1520c(c)(2)); *see also Rollins v. Massanari*,
261 F.3d 853, 856 (9th Cir. 2001) (finding that an ALJ properly discounted a
treating physician's opinion for being "so extreme as to be implausible" and "not
supported by any findings" where there was "no indication in the record" as to the
basis for the opinion).

　　　　The ALJ also adequately considered the supportability of the medical source
opinions.  The ALJ noted that Dr. Escobar's examination of Plaintiff in February
2019 was generally normal and Plaintiff's later records did not reveal significant
concerns about chronic fatigue syndrome.  [AR 16-17, 523-24.]  As for Dr. Oei's
opinion, the ALJ found that Plaintiff had been treated for GERD with medication
and that testing indicated Plaintiff's stomach, esophagus and duodenum were within
normal limits.  [AR 16, 515.]  The ALJ also noted that the additional medical
evidence of record revealed mostly mild findings, as discussed in more detail below.
[AR 16-17.]  Thus, substantial evidence supports the ALJ's finding that the medical
source opinions were not fully supported by the objective medical evidence.  *See* 20
C.F.R. § 404.1520c(c)(1)).

　　　　Plaintiff further complains that the ALJ inaccurately described Dr. Escobar,
Dr. Oei, and Plaintiff's other doctors as "Veteran's Administration doctors" and
erroneously "devalued" their opinions by "lumping" them together with the VA
disability decision.  [Pl. Br. at 7-8.]  Even if the ALJ erred in referring to Plaintiff's
doctors as VA doctors, Plaintiff has not shown actual harm.  Under the new
regulations, the ALJ was not even required to address the VA disability decision.

1    See 20 C.F.R. § 404.1504 (stating that the ALJ need not provide "any analysis in our

2    determination or decision about a decision made by any other governmental agency

3    or a nongovernmental entity about whether you are disabled, blind, employable, or

4    entitled to any benefits."); *Diaz v. Comm'r of Soc. Sec.*, No. 2:19-CV-537-KJN,

5    2020 WL 2732027, at *3 (E.D. Cal. May 26, 2020).  The only evidence that the ALJ

6    was required to consider was the evidence underlying the VA's disability

7    determination [AR 15-17].  *See* 20 C.F.R. § 404.1504.[4]  As discussed, the ALJ

8    properly evaluated the medical evidence underlying the VA disability decision (*i.e.*,

9    the opinions of Dr. Escobar, Dr. Oei, and the other medical sources).  Because the

10   ALJ's evaluation of the persuasiveness of the opinion evidence was supported by

11   substantial evidence, any asserted errors in referring to Plaintiff's doctors as the

12   "Veteran's Administration doctors" and addressing their opinions together as a

13   group, were harmless.  *See Brown-Hunter v. Colvin*, 806 F.3d at 492 (explaining

14   that even when the ALJ commits error, the ALJ's decision must be upheld when

15   "the error is harmless, meaning that it is inconsequential to the ultimate

16   nondisability determination") (internal quotation marks and citation omitted).

17       **B.  Plaintiff's RFC**

18       An RFC "is the most [one] can still do despite [his or her] limitations" and it

19   is "based on all the relevant evidence in [the] case record," rather than a single

20   medical opinion or piece of evidence.  20 C.F.R. § 404.1545(a)(1); *see also Vertigan*

21   *v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the

22   responsibility of the ALJ, not the claimant's physician, to determine residual

23   functional capacity.").

24       Plaintiff contends that the ALJ's RFC assessment for a limited range of light

25

26   [4]    The Court notes that the ALJ correctly determined that the VA rating of
     disability did not compel a similar finding on Plaintiff's claim for DIB [AR 17].  *See*
27   *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (explaining that "a VA
     rating of disability does not necessarily compel the SSA to reach an identical
28   result").

work is not supported by substantial evidence.  [AR 14-15; Pl. Br. at 11-13.]  He argues that none of the treating physicians specifically assessed Plaintiff with an RFC for a range of light work and, while the consultative examiner and state agency medical consultants opined that Plaintiff could perform medium work, the ALJ found their opinions unpersuasive.  An ALJ's RFC determination, however, need not precisely reflect any particular physician's assessment.  *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); *see also Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4, n.8 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (emphasis in original).  It is the ALJ's responsibility to interpret the evidence of record, including the medical evidence.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (explaining that the ALJ is responsible for resolving conflicts in the medical evidence and resolving ambiguities).

Here, the ALJ carefully analyzed the various medical opinions, treatment records and Plaintiff's own testimony in formulating the RFC for a limited range of light work.  The ALJ explained that the medical evidence of record revealed mostly mild findings and conservative treatment.  [AR 16.]  As discussed, examination of Plaintiff in February 2019 was "generally normal" and an endoscopy in June 2019 revealed his stomach, esophagus, and duodenum were within normal limits.  [AR 16, 515, 523-24.]  The ALJ also noted that Plaintiff was fitted with a continuous positive airway pressure (CPAP) mask for obstructive sleep apnea in August 2019, and he was "doing well" in September 2020.  [AR 16-17, 542, 673.]  Plaintiff's asthma and COPD were reported as stable and he was advised to continue taking his medications and using the CPAP machine.  [AR 16, 673-74.]  In February 2021, when imaging of Plaintiff's lumbar spine and cervical spine revealed some degenerative changes at L5-S1 and C5-6 and C6-7, Plaintiff's doctor recommended

1    only conservative treatment, including ibuprofen, ice, and heat.  [AR 16, 737-38,

2    761-62.]  In December 2021, a pulmonary function test showed no obstruction or

3    restriction consistent with COPD.  [AR 16, 794-97.]  And, while the ALJ recognized

4    that Plaintiff continued to experience ongoing symptoms from chronic fatigue

5    syndrome and his other conditions, the ALJ discounted Plaintiff's subjective

6    symptom testimony to the extent it was inconsistent with his admitted activities and

7    other evidence of record.[5]  [AR 15-17.]  Thus, the ALJ reasonably considered the

8    objective medical evidence, along with Plaintiff's subjective complaints, in

9    formulating the RFC.  [AR 14-18.]  *See* 20 C.F.R. § 404.1545(a)(3).

10         Plaintiff asserts that the third-party statement of his wife, Kjersti Richardson,

11    describes functional limitations that are inconsistent with the RFC assessed.  [Pl. Br.

12    at 12-13.]  The ALJ, however, disregarded Ms. Richardson's statement, because it

13    was not consistent with the medical and other evidence of record.[6]  [AR 17-18.]  As

14    such, the ALJ did not err in failing to incorporate her statement into the RFC.  *See*

15    *Bayliss v. Barnhart*, 427 F.3d. 1211, 1217 (9th Cir. 2005) (explaining that the ALJ is

16    only required to consider those limitations for which there was record support in

17    determining RFC).

18         In sum, substantial evidence supports the ALJ's assessment of Plaintiff's

19    RFC.  While Plaintiff advocates for an alternative interpretation of the evidence, the

20    ALJ's interpretation was rational and, therefore, must be upheld.  *See Burch*, 400

21    F.3d at 679 ("Where evidence is susceptible to more than one rational

22    interpretation," the ALJ's decision should be upheld).

23    / / /

24    / / /

25    

26    [5]    Plaintiff does not challenge the ALJ's consideration of his subjective
symptom testimony.  [Pl. Br. at 5, 12.]

27    

28    [6]    Plaintiff does not challenge the ALJ's consideration of Ms. Richardson's
statement.  [Pl. Br. at 5; Response at 5.]

## V.   CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED:  August 29, 2023

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

11